IN THE UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRICK JONES, JR. | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. |
| THE LAKE COUNTY SHERIFF'S OFFICE and LAWRENCE E. OLIVER, in his individual capacity, | ) ) ) ) ) |
| Defendants. | ) ) ) |

## **COMPLAINT**

Plaintiff, Patrick Jones, Jr. ("Plaintiff" or "Mr. Jones"), by his attorneys, The Law Offices of Ruth I. Major, P.C., for his Complaint against Defendants, the Lake County Sheriff's Office ("Defendant Sheriff's Office") and Lawrence E. Oliver ("Defendant Oliver", an individual (hereinafter collectively referred to as "Defendants"), alleges as follows:

### **INTRODUCTION**

1. Patrick Jones was employed by Defendant, the Lake County Sheriff's Office, where he attended the Police Training Institute (the "Police Training Institute") at the University of Illinois Urbana-Champaign as a recruit. At the suggestion of his instructors, Mr. Jones sought study aides to help prepare for an upcoming examination, asking a friend who was a police officer and had attended a different police training program in the past for any helpful notes she may have. She provided him with a study guide that clearly appeared to have been prepared by a recruit. Following a report from another recruit who claimed to believe that Mr. Jones obtained answers to an actual state exam rather than a study guide, the Police Training Institute conducted an investigation into the matter.

1

2. The investigation did not substantiate the claim that Mr. Patrick had an exam in his possession and the Associate Director of the Police Training Institute issued a written report confirming that Mr. Jones had been honest, forthcoming, and fully cooperative with the investigation. Moreover, that report found no wrongdoing on Mr. Jones's part. The report concluded with a recommendation that Mr. Jones be allowed to continue at the Police Training Institute, and no further action was recommended.

3. Despite the report's findings and suggestions, and without conducting any investigation of its own, the Sheriff's Office summarily terminated Mr. Jones's employment and abruptly removed him from the training program. At that time and since, Undersheriff Lawrence Oliver published within and outside the Sheriff's Office, initially in the form of a termination letter, false statements that Mr. Jones was untrustworthy, lacked integrity and had violated the Sheriff's Offices rules and/or laws.

4. The false statements impugn Mr. Jones' integrity in carrying out his job responsibilities. Therefore, Mr. Jones brings this action under Illinois tort law for defamation *per se*.

## THE PARTIES

5. Plaintiff, Patrick Jones, Jr., is a citizen of Wisconsin who was employed with the Lake County Sheriff's Office from September 3, 2019 through September 30, 2019.

6. Defendant Lake County Sheriff's Office is a county office established by the Constitution of the State of Illinois for the County of Lake, with a place of business at 25 South Martin Luther King Drive, Waukegan, IL 60085, and is a citizen of Illinois.

7. Defendant, Lawrence E. Oliver, is a citizen of Illinois. Defendant Oliver is employed as Undersheriff for the Lake County Sheriff's Office in Lake County, Illinois and as such is its agent.

## JURISDICTION AND VENUE

8. This Court has jurisdiction pursuant to 28 U.S.C. § 1332, in that Plaintiff is seeking compensatory damages in excess of $75,000 and the matter is between citizens of different states.

9. This action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391(b)(2), in that it arises out of events that occurred in Waukegan, Illinois, which in the territory covered by the Northern District of Illinois, Eastern Division. The Lake County Sheriff's Office is located in the Northern District of Illinois, Eastern Division.

## RELEVANT FACTS

10. In mid-2019 Mr. Jones accepted a position with the Lake County Sheriff's Office. He was extremely excited about the opportunity to serve as a police officer.

11. Upon beginning employment with the Sheriff's Office, Mr. Jones attended the Police Training Institute at the University of Illinois Urbana-Champaign in September 2019 as required. The Police Training Institute is comprised of police recruits from throughout the State of Illinois and trainers from various law enforcement agencies.

12. On September 17, 2019, Director of the Police Training Institute, Dr. Mike Schlosser, addressed Mr. Jones' recruit class, advising them of the importance of being resourceful in obtaining study materials such as sharing notes with each other and working together to prepare for an upcoming examination. Primary Instructor Ed Ogle relayed similar instructions to the class, encouraging individuals to share notes.

13. Following Dr. Schlosser's suggestion, on September 17, 2019, Mr. Jones contacted Rachel Richardson, a friend, via text messaging. Ms. Richardson was a member of the Mt. Prospect Police Department and had previously graduated from the Cook County Sheriff's Training Institute. Mr. Jones asked Ms. Richardson for any notes she had prepared while studying for the state exam.

14. Ms. Richardson responded that her notes wouldn't be limited to the just to the state examination and provided Mr. Jones with a study guide ("Study Guide") via a Google Drive link titled "State Review Complete."

15. On September 18, 2019, during lunch, fellow recruit, Lena Melki, also of the Lake County Sheriff's Office, expressed apprehension to Mr. Jones and others at their lunch table about the upcoming examination. Mr. Jones, believing that students were intended to collaborate and share notes, reassured her she would do fine and shared with her that he had obtained the Study Guide that might help though he didn't give her a copy of the study guide.

16. Following Mr. Jones's conversation with Ms. Melki, another recruit reported to the Police Training Institute's Assistant Director Joseph Gallo that Mr. Jones may be in possession of "answers to an exam."

17. On September 19, 2019, Mr. Gallo initiated an extensive investigation which included, *inter alia,* calling each of the individuals who were present at the lunch table in separately, advising each that it was imperative they were truthful in answering questions, and then inquiring about Mr. Jones' statements at the lunch table on September 18, 2019 about having materials to use to prepare for the exam.

18. All of the recruits except for the one who reported the matter confirmed that Mr. Jones never said he had a copy of the exam but said he had a study guide for the exam.

19. Mr. Jones made the document in question available to Mr. Gallo who reviewed it and confirmed that it appeared to be a study guide.

20. Throughout the investigation, Mr. Jones was forthcoming, fully cooperative, and honest. Mr. Gallo also requested information regarding the Study Guide from all other recruits.

21. During this process Mr. Gallo communicated with the Illinois Law Enforcement Training and Standards Board (the "Training and Standards Board"). The Training and Standards Board is the Illinois state agency mandated to promote and maintain a high level of professional standards for law enforcement and correctional officers. The Training and Standards Board, through Patrick Connolly, Deputy Director of Field Operations, and Fred Kientzle, Police Training Specialist, reviewed the Study Guide and collaborated with Mr. Gallo on the investigation.

22. Following the completion of his investigation, Mr. Gallo prepared a report with the Subject Line, "Investigation – State Exam Study Guide", dated September 24, 2019 (the "Investigation Report"), regarding his investigation into the allegation previously made against Mr. Jones. The Memorandum Form is attached hereto as **Exhibit A**.

23. In the Investigation Report, Mr. Gallo reported the actions taken to investigate the matter, discussed findings and included recommendations.

24. The Investigation Report stated that based upon his investigation, Mr. Gallo recommended, "that Patrick Jones be allowed to remain at PTI [Police Training Institute]." Messrs. Connolly and Kientzle of the Training and Standards Board both concurred with Mr. Gallo's recommendation as also reported in the Investigation Report.

25. The Investigation Report finding included that Mr. Jones did not seek Ms. Richardson's notes until after instructor's encouraged note sharing, the document Mr. Jones received was entitled "state exam review" and was not in the form of a test, the document was

readily accessible on the internet, and the Training and Standard's Board was already aware of the document's existence and had changed the test accordingly. The report also determined that Mr. Jones did not share the study guide with any fellow recruits.

26. Defendants were aware of the Investigation Report, its factual findings, and its conclusions. The Sheriff's Office was provided with a copy of the Investigation Report.

27. The Sheriff's Office never conducted its own independent investigation into the matter. It never even interviewed Mr. Jones concerning what had occurred or asked him to see the document which was the subject of the investigation.

### Defendants Terminated Mr. Jones's Employment

28. On September 30, 2019, Mr. Jones was called into a meeting with Sgt. Keith Kaiser, the Director of Training with the Sheriff's Office, while he was at the Police Training Institute. Sgt. Kaiser tendered Mr. Jones with a document with the Subject Line, "Letter of Termination" ("Termination Letter"). The Termination Letter, which was signed by Undersheriff Lawrence E. Oliver and dated September 30, 2019, is attached hereto as **Exhibit B**.

29. Disregarding the finding and recommendation of Mr. Gallo's investigation, the Termination Letter stated,

> An administrative review into the acquisition of this document, your actions to distribute that document to other recruits under the guise as a '*study guide*' and your response, fall short of the truthfulness and integrity that are essential to the core standard of values we hold ourselves accountable to in law enforcement.

30. The Termination Letter stated that Mr. Jones was in violation of the Lake County Sheriff's Office Rules and Regulations, specifically Rule 2.1 "Dishonorable Conduct" which requires a Sheriff's Office employee to "abide by all laws, ordinances and Sheriff's policies, rules, regulations and general orders and directives of the Sheriff's Office" and states employees "will not act in any manner which brings dishonor or discredit to themselves or to the Sheriff" and Rule

2.2 "Unsatisfactory Performance" which requires employees to "maintain sufficient competency in their skills and training so that they can properly perform their duties and assume the responsibilities of their positions. Members will employ the highest standards of efficiency and care when performing their duties."

31. Defendants made no effort to investigate events regarding the Study Guide and had no basis to ignore Mr. Gallo's conclusions as well as the conclusions and recommendations of the Training and Standards Board staff who were involved in the investigation.

32. Defendants failed to even interview Mr. Jones or his friend who had provided him with the study guide before including the false statements about Mr. Jones in the Termination Letter.

33. In addition to being sent to Mr. Jones, the Termination Letter with the false statements about Mr. Jones indicates Undersheriff Oliver published the Termination Letter and the contents therein to numerous individuals within the Sheriff's Office, including Sheriff John Idleburg, Chief of Staff Anthony Vega, Deputy Chief Christopher Thompson, and Business Manager James Chamernik. The Termination Letter was also published to third parties in the form of the six-person Lake County Sheriff's Office Merit Commission.

### Mr. Jones's Efforts to Obtain a Subsequent Law Enforcement Position

34. The Lake County Sheriff's Office has also been sharing the Termination Letter and/or the false statements it contains with prospective employers.

35. Following the termination of his employment with the Sheriff's Office, Mr. Jones was contacted by the Des Plaines Police Department in Des Plaines, IL regarding a position.

36. During the interview process, Mr. Jones successfully passed a polygraph, which included Mr. Jones disclosing events at the Police Training Institute regarding the Study Guide.

7

Following completion of the polygraph, Mr. Jones was instructed to forward his transcripts for review.

37. Prior to receiving his transcripts, the Des Plaines Police Department issued a letter that Mr. Jones would not be advancing through the hiring process. Mr. Jones contacted the human resources department and was informed that the decision may have been based upon a negative reference from a former employer.

38. In January 2020, Mr. Jones began interviewing with the Waukegan Police Department in Waukegan, IL. Again, Mr. Jones was forthright and relayed the circumstances regarding the Study Guide and his termination from the Sheriff's Office. The Sheriff's Office had communicated to the Waukegan Police Department that Mr. Jones was "less than trustworthy."

39. In April 2020, Mr. Jones sought a position with the Antioch Police Department in Antioch, IL. Detective Tom Nowotarski informed Mr. Jones that he was their top candidate, and significantly ahead of his closest competitor. Mr. Jones passed his pre-employment drug screening, his polygraph, and his psychological evaluation. Mr. Jones was subsequently not selected for the position.

40. Upon information and belief, the Sheriff's Office has been providing false statements to prospective employers that impugn Mr. Jones's trustworthiness and integrity.

**COUNT I: DEFAMATION, *PER SE***
**(Against Defendants Lake County Sheriff's Office**
**and Lawrence E. Oliver)**

41. Mr. Jones restates and realleges the allegations of paragraphs 1 through 40 as if fully restated herein.

42. The statements contained in the Termination Letter that Mr. Jones took actions to distribute the Study Guide to fellow recruits and that Mr. Jones actions, "fall short of the

truthfulness and integrity" are false and were known to be false or were made with reckless disregard for the truth or falsity of the statements. These false statements were published to multiple individuals including all members of the Lake County Sheriff's Office Merit Commission.

43. The statements made by Defendant Oliver impute a want of integrity in the discharge of Mr. Jones duties of office and employment.

44. The statements made by Defendant Oliver prejudice Mr. Jones and impute a lack of ability in his profession, which is in the area of law enforcement, because they can be used to deny Mr. Jones employment with other departments or to deny being rehired by Defendant. Honesty and integrity are requirements for a career in law enforcement.

45. At all relevant times, Defendant Oliver was aware of Mr. Gallo's Investigation Report and its conclusions, and knew the statements he was including in the Termination Letter were false or should have known they were false based on the information contained in the Investigation Report.

46. An unprivileged publication occurred when Defendant Oliver published knowingly false statements within the Sheriff's Office concerning Mr. Jones's dismissal to the employees and officers of the Sheriff's Office.

47. By publishing the false statements in the Termination Letter, Defendant Oliver, and Defendant Sheriff's Office, through Defendant Oliver, acted with malice.

48. Defendant Oliver failed to properly investigate the truth of the statements made in the Termination Letter including failing to interview Mr. Jones himself, which Mr. Oliver and the Sheriff's Office had every opportunity to do, and failing to personally review the document that was the subject of the Investigation Report.

49. The statements made by Defendant Oliver, and included in the Termination Letter, are not subject to an innocent construction as there is no reasonably innocent non-defamatory interpretation.

50. Upon information and belief, Defendants continue to inform potential employers of Mr. Jones that Mr. Jones is not trustworthy, further publishing false statements to the detriment of Mr. Jones.

51. Defendants have refused to cease making false statements regarding Mr. Jones's trustworthiness and integrity or to otherwise mitigate the damage to Mr. Jones.

52. As a result of Defendants' false and defamatory statements, Mr. Jones has suffered damages including interference with his career, for which integrity and honesty are requirements, and pain and suffering resulting from his professional humiliation and impairment of his personal and professional reputation.

**WHEREFORE** Plaintiff respectfully requests the entry of judgment in his favor and against Defendants as follows:

A. Injunctive relief in the form of a permanent injunction that prohibits Defendants Lake County Sheriff's Office and Lawrence E. Oliver from publishing false and defamatory statements concerning Mr. Jones including, but not limited to any statement or insinuation that Mr. Jones is dishonest or lacks integrity in performing his job duties;

B. Compensatory damages, including presumed damages, in an amount to be proven at trial;

C. Punitive damages;

D. Pre- and post-judgment interest computed according to 735 ILCS § 5/2-1303; and

E. Such other and further relief as may be just in law and in equity.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests a trial by jury on all issues so triable.

Respectfully submitted,

**Dated**: September 29, 2020

**PATRICK JONES, JR.**

/s/ Ruth I. Major
One of His Attorneys

Ruth I. Major (ARDC No. 6205049)
Keith D. Barnstein (ARDC No. 6299044)
**The Law Offices of Ruth I. Major, P.C.**
70 West Madison Street, Suite 2020
Chicago, Illinois 60602
Phone: (312) 893-7544
rmajor@major-law.com
kbarnstein@major-law.com