**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PATRICK JONES, JR. | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 20-cv-05798 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| LAKE COUNTY SHERIFF'S OFFICE and | ) | |
| UNDERSHERIFF LAWRENCE OLIVER, | ) | |
| in his individual capacity. | ) | |
| | ) | |
| Defendants. | | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Patrick Jones, Jr. brings this action against the Lake County Sheriff's Office

("LCSO") and Undersheriff Lawrence Oliver, in his individual capacity. Plaintiff alleges in Count I

that a letter drafted by defendant Oliver laying out the reasons for the termination of Jones'

employment with the LCSO was defamatory. Plaintiff alleges in Count II that his termination from

the LCSO violated his occupational liberty interests under the Due Process Clause. For the reasons

laid out below, the Court grants defendants' motion for summary judgment [54] as to both Counts.

**Background**

The following facts are undisputed unless otherwise noted. This matter arises from plaintiff

Jones' brief tenure as a deputy sheriff with defendant LCSO. Defendant Oliver is the undersheriff,

or second-in-command, at LCSO. (Dkt. 60 ¶ 62.) Plaintiff was hired on September 3, 2019, and

immediately began a required training course at the Police Training Institute ("PTI"). To be

certified as an Illinois law enforcement officer, recruits must complete a 12 to 14 week training

course at an approved police academy. Then, recruits must pass an examination (the "state exam")

developed by the Illinois Law Enforcement and Training Standards Board (the "ETS Board"). The

1

exam is administered by the ETS Board at academies such as the PTI; PTI staff do not have access to the examination itself.  (Dkt. 60 ¶ 6.)

## I.      The "Study Guide"

During Jones' first days at PTI, instructors encouraged the recruits to share notes and utilize Quizlet, an online flashcard platform.  (Dkts. 60 ¶ 42;. 73 ¶ 2.)  On September 17, 2019, Jones texted his then-girlfriend, who was a police officer in a nearby jurisdiction and had completed a police training academy two years earlier, to ask if she had her notes from the state exam. (Dkt. 73 ¶ 3.) His girlfriend replied that day with a Google Drive link to a document (the "document").  Plaintiff characterizes this document as a "study guide" that plaintiff's girlfriend had put together with her classmates; defendant characterizes it as a "cheat sheet"[1] that contained questions and answers from the state exam.  On September 18, plaintiff discussed the document with several other recruits and showed them the document on his phone.  The evidence presented is contested as to the contents of the document, Jones' understanding of the document, and what exactly he said to the other recruits.[2]

## II.     The Investigation

After the conversation with Jones about the document, one of the recruits reported to Joseph Gallo, then Assistant Director of the PTI, that Jones may have the answers to the state exam. Gallo initiated an investigation into the matter, cooperating with two ETS Board staff members— Fred Kienzle and Kelley Griffith.  During the course of the investigation, Griffith determined that

---

[1] A cheat sheet is a "a sheet containing information (such as test answers) used secretly for cheating."  *Cheat sheet,* Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/cheat%20sheet (last visited Mar. 24, 2023).

[2] Upon review of the record, the Court notes that the other recruits present have opposing versions of what was said: some explain that Jones described the document as a "study guide," while another noted "Jones said that this is the final exam," and another stated that plaintiff "stated not to worry [about the state exam] because he had answers to the state test."  (Dkt. 74-4, at 4–10.)

the document was the same as one that had been subject to an ETS Board investigation in April

2019. (Dkt. 60 ¶ 15.)  Griffith compared the document to the state exam questions and came to

believe that the document did indeed contain state exam questions and answers.[3] (Dkt. 60 ¶ 11.)

Gallo then issued a report summarizing his findings and noting his opinion that the document was a

study guide, that Jones "lacked the understanding to interpret" parts of it, and that there was not an

integrity issue with respect to Jones' possession of the document.  (Dkt. 74-5, at 6–7.)  Plaintiff and

defendant disagree about the completeness and accuracy of Gallo's report.[4]  The parties dispute

whether the document actually contained exam answers and, if it did, whether those exam answers

would have been helpful to Jones and other recruits given potential changes to the state exam.

III.    Jones' Termination and Aftermath

Gallo reported to defendant Oliver that he was investigating Jones and provided the

investigative report and other documents underlying the investigation.  Oliver met with LCSO

Sheriff Idleburg and Chief of Staff Vega to discuss the matter.  (Dkt. 60 ¶ 69.)  Idleburg and Oliver

disagreed with Gallo's opinions and believed that Jones had cheated and shown a lack of integrity.

On September 30, 2019, LCSO terminated Jones' employment.  Oliver drafted a termination

letter that briefly summarized his conclusions from reviewing the investigation and speaking with

PTI and ETS Board officials, writing:

> An administrative review into the acquisition of this document, your actions to
> distribute that document to other recruits under the guise as a "*study guide*," and your

---

[3] As explained below, it is not necessary for the Court determine whether this document was in fact a cheat sheet or a study guide.  But upon review of the document, which was filed under seal, the Court finds it unlikely that a reasonable factfinder would find the document to be anything other than a cheat sheet.  It contains questions and answers in a format designed to provide recruits with the answers to the state exam, not to teach them the underlying material.  For instance, some entries in the document list "all of the above" as the answer, without listing what the actual choices are.  (Dkt. 60 ¶ 36.)

[4] For example, because Jones received the document by Google Drive links, it did not mean (as Gallo wrote in the report) that the document was publicly available on the internet.  Gallo also wrote that Kientzle agreed with his recommendations; however, Kientzle explained in his deposition that he had never been asked whether he agreed with Gallo's recommendations.  (Dkt. 73 ¶ 19.)

response, fall short of the truthfulness and integrity that are essential to the core
standard of values we hold ourselves accountable to in law enforcement.

(Dkt. 74-6.) The letter also states that Jones violated the LCSO's Rules and Regulations. In addition
to Jones, the letter was sent to the Merit Commission, as well as the Deputy Chief of the Highway
Patrol, the LCSO Business Manager, and the Director of Training. (Dkt 60 ¶ 70.) It was also added
to Jones' personnel file. The parties dispute whether Oliver was required by law to provide a copy
of the termination letter, or just a notice of termination, to the Merit Commission.

After his termination from LCSO, Jones applied for comparable jobs at 28 law enforcement
agencies. (Dkt. 73 ¶ 32.) During the course of Jones' job search, LCSO provided the termination
letter to the Waukegan Sheriff's Office after Jones signed a release authorizing them to do so.
(Dkts. 60 ¶ 53; 73 ¶ 33.) Jones did not identify another potential employer that gained access to the
letter itself but stated that potential employers asked about the reasons for his termination from
LCSO in nearly all of his job interviews. Jones attained employment as a security guard and EMT at
Lakeview Specialty Hospital in January 2021, and was ultimately hired by the Kenosha County
Sheriff's Office in December 2021. (Dkt. 60 ¶¶ 61, 77.)

**Initial Matters**

Defendants ask the Court to strike Jones' affidavit, arguing that it is a "sham affidavit."
(Dkt. 74-2.) A sham affidavit is "an affidavit that is inadmissible because it contradicts the affiant's
previous testimony . . . unless the earlier testimony was ambiguous, confusing, or the result of a
memory lapse." *Cook v. O'Neill*, 803 F.3d 296, 298 (7th Cir. 2015). The rule helps ensure that "a
genuine issue of material fact cannot be conjured out of nothing." *James v. Hale*, 959 F.3d 307, 315
(7th Cir. 2020). Defendants point to two alleged inconsistencies between the affidavit (Dkt. 74-2)
and Jones' December 16, 2021 deposition (Dkt. 74-18). First, defendants explain that Jones said he
was unable to obtain a police officer job for "approximately three years" following his termination
from LSCO, when in fact he was hired by the Kenosha County Sheriff's Department on December

4

21, 2021, two years and three months after his termination. Second, defendants assert that there is inconsistency between Jones' affidavit statement that "the only negative aspect of my employment record was the false statements made by the LCSO," (Dkt. 74-2 ¶ 12), and his deposition testimony that:

> [T]he only negative thing is termination letter – not a letter – termination from Lake County. And some of them I am able to explain myself and some of them I am not. But the fact that I am terminated from Lake County is the only negative thing that is on the application.

(Dkt. 60 ¶ 60.) The Court finds that the reference to Jones' three years of unemployment is a harmless approximation, and that the quoted language from Jones' deposition is ambiguous enough such that it is not directly contradicted by his newer affidavit. The Court thus declines to strike this affidavit.

Defendants also seek to strike "the affidavit of a fellow recruit" on the grounds that it "contradicts the recruit's prior written statement" in violation of Fed. R. Civ. P. 37. (Dkt. 81, at 3–4.) But the Court is unable to fully evaluate this request as defendants fail to identify the affidavit in question or specify the inconsistency, and thus declines to strike any other affidavits plaintiff has provided.

**Legal Standard**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In determining whether a genuine issue of material fact exists, this Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). However, "[m]erely alleging a factual dispute cannot defeat the summary judgment motion." *Samuels v. Wilder*, 871 F.2d 1346, 1349 (7th Cir. 1989). "The mere existence of a

scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

**Discussion**

I.     Count I – Defamation *Per Se* Claim

To prevail on a defamation claim, a plaintiff must show that the defendant made a false statement about the plaintiff, that the defendant published that statement to a third party, and that this publication caused damages. *Krasinski v. United Parcel Service, Inc.*, 124 Ill. 2d 483, 490, 530 N.E.2d 468 (1988). Statements are defamatory *per se*, and do not require plaintiff to prove damages, when they are "obviously and naturally harmful on their face." *Owen v. Carr*, 113 Ill. 2d 273, 277, 497 N.E.2d 1145 (1986). In Illinois, five categories of statements are considered defamatory *per se*. The two categories relevant to this matter are: (1) "words that impute a person is unable to perform or lacks integrity in performing her or his employment duties," and (2) "words that impute a person lacks ability or otherwise prejudices that person in her or his profession." *Green v. Rogers*, 234 Ill. 2d 478, 917 N.E.2d 450, 459 (2009). Although there is a dispute as to whether defendants actually published the statements in question, the Court does not address this prong because Oliver prevails in any case on his affirmative defenses.

Defendants raise two affirmative defenses to defamation: opinion and truth. First, "statements which do not contain factual assertions are protected under the first amendment and may not be the basis of a defamation action." *J. Maki Construction Co. v. Chicago Regional Council of Carpenters*, 379 Ill. App. 3d 189, 199–200, 882 N.E.2d 1173 (2d Dist. 2008) (quotations omitted). In assessing whether a statement is opinion or factual, the key question is whether it is "objectively verifiable as true or false." *Madison v. Frazier*, 539 F.3d 646, 656 (7th Cir. 2008). Courts must evaluate "the totality of the circumstances" to determine whether a statement is opinion or fact. *Piersall v. SportsVision of Chicago*, 230 Ill. App. 3d 503, 595 N.E.2d 103, 107 (1st Dist. 1992). Courts

look at "whether the statement has a precise and readily understood meaning; whether the statement is objectively verifiable as true or false; and whether the statement's literary, social, or public context signals that it has factual content." *Id.* (citing *Bryson v. News Am. Publications, Inc.*, 174 Ill. 2d 77, 672 N.E.2d 1207, 1220 (1996)). Even statements that initially appear to be opinion may "still imply a false assertion of fact if the facts on which the speaker bases his opinion are either incorrect or incomplete, or if his assessment of them is erroneous." *Madison,* 539 F.3d at 656 (citing *Milkovich v. Lorain Journal Co*, 497 U.S. 1, 18–19, 110 S. Ct. 2695, 111 L. Ed. 2d 1(1990)).

Second, defamation defendants are not liable for true statements. Under Illinois law, a defamation claim fails if "the statement, although not technically true in every respect, was substantially true." *Glob. Relief Found., Inc. v. New York Times Co.*, 390 F.3d 973, 982 (7th Cir. 2004). To establish substantial truth, a defendant need only show "the truth of the 'gist' or 'sting' of the defamatory material." *Id.* (citing *Cianci v. Pettibone Corp.*, 298 Ill. App. 3d 419, 698 N.E.2d 674, 678–79 (1998)). Though substantial truth is "normally a jury question," a court must first ask "whether a reasonable jury could find substantial truth has not been established." *Id.* at 987.

Although the parties vigorously dispute a number of facts related to Jones' termination, none of these are relevant to assessing the claim in Jones' complaint: that the termination letter was defamatory. Despite apparent issues with defendants' investigative process, the contents of the termination letter are a mix of opinion statements and plainly true factual predicate statements underlying those opinions. Simply put, the termination letter does not contain a false statement of fact and is thus not defamatory. Plaintiff alleges that the termination letter, and in particular, the allegation that he "fell short of the truthfulness and integrity that are essential to the core standard of values we hold ourselves accountable to in law enforcement" is defamatory. This phrase in the termination letter is clearly Oliver's opinion and is not a verifiable fact. The inquiry does not end here, though. Oliver may still be liable "if the facts on which [he] bases his opinion are either

incorrect or incomplete, or if his assessment of them is erroneous." *Madison,* 539 F.3d at 656 (citation omitted).

The Court agrees with plaintiff that a number of facts, including whether the document was a cheat sheet, what plaintiff believed the document contained, and what plaintiff planned to do with the document, are genuinely disputed. "Not all disputed facts, however, are relevant and material." *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018). And indeed, none of the disputes of fact highlighted by plaintiff are relevant to assessing the truthfulness of the termination letter. In *Global Relief Foundation, Inc. v. New York Times, Co.*, the Seventh Circuit found that a newspaper's report that an entity was under investigation for funding terrorism was substantially true because the investigation was real, even though plaintiff demonstrated that there was a triable question of fact as to whether the defendant actually had funded terrorism. 390 F.3d at 988–88.

Similarly here, defendants need not show that plaintiff actually cheated to establish the truth of the termination letter. Jones' possession of the document and the subsequent investigation are sufficient to support Oliver's opinion that Jones lacked the integrity to continue in the PTI. And indeed, the gist of all the enumerated facts in the termination letter is true. The letter does not proclaim that the document was a cheat sheet—only that Jones "possessed a document" that was "a source of concern with the [ETS Board]" and that had "generated an investigation six months prior at one of the Cook County academies." (Dkt. 74-6.). Each of these are true facts. The rest of the letter merely describes the investigate steps taken during the inquiry into Jones' conduct. Defendants need not prove that the document was a cheat sheet or that Jones knew it was a cheat sheet to establish the substantial truth of the factual statements in the termination letter. Because the statement regarding plaintiff's integrity is clearly an opinion and not a verifiable factual statement, and because the factual predicates for that opinion are substantially true, plaintiff's defamation claim must fail.

II.    <u>Immunity</u>

Even if plaintiff had established a material question of fact as to his defamation claim, Count I would still fail because Undersheriff Oliver is entitled to absolute immunity from such claims. Under Illinois common law, executive officials have absolute immunity from defamation suits for statements within the scope of their official duties. *Blair v. Walker*, 64 Ill. 2d 1, 7, 349 N.E.2d 385 (1976).  "This restriction is justified by the countervailing policy that officials of government should be free to exercise their duties without fear of civil liability."  *Id.* at 6.  The Court must determine (1) whether a county Undersheriff is an executive official, and (2) if so, whether Oliver was acting within the scope of his official duties in drafting and circulating the termination letter.

Whether this common law immunity attaches to county undersheriffs appears to be a matter of first impression.  Plaintiff cites *Novoselsky v. Brown* for the proposition that immunity attaches only when the defendant is "an elected official who is the chief administrator of a local government office and is charged with a number of executive functions and duties."  822 F.3d 342, 350 (7th Cir. 2016).  But nowhere in that case does the Seventh Circuit suggest that these are *necessary*, rather than *sufficient*, criteria to warrant immunity.  More relevantly, Illinois courts have extended this absolute immunity to deputy city police superintendents, *Dolatowski v. Life Printing and Pub. Co., Inc.*, 197 Ill. App. 3d 23, 28–29, 554 N.E.2d 692 (1st Dist. 1990), and police detectives, *Harris v. News-Sun*, 269 Ill. App. 3d 648, 652–53, 646 N.E.2d 8 (2d Dist. 1995).  And other courts within this district have applied the immunity to a spokesperson for the state highway patrol, *Okun v. Illinois State Toll Highway Auth.*, No. 06 C 5799, 2007 WL 1119269, at *4 (N.D. Ill. Apr. 12, 2007) (Marovich, J.), and a police sergeant, *Lewis v. Kemper*, No. 10 C 7957, 2011 WL 1882633, at *2 (N.D. Ill. May 13, 2011) (Keys, J.).

Undersheriff Oliver is the second in command to the elected sheriff at the LCSO.  (Dkt. 60 ¶ 62).  That fact alone, in conjunction with courts' willingness to extend absolute immunity to law

enforcement officials of even lower rank than undersheriffs, establishes that Oliver is an executive official entitled to absolute immunity from defamation suits as laid out in *Blair v. Walker*.

Drafting and circulating the termination letter were also in the scope of defendant Oliver's job duties. Here, the "sole consideration is 'whether the statements made were reasonably related' to the official's duties." *Novoselsky*, 822 F.3d at 350 (quoting *Geick v. Kay*, 236 Ill. App. 3d 868, 603 N.E.2d 121, 127–128 (2d Dist. 1992)). Hiring and firing decisions, especially regarding issues such as integrity, are clearly reasonably related to the undersheriff's role. Therefore, Oliver is also protected from Jones' defamation claim under Illinois common law immunity. Because this common law immunity attaches, the Court need not address the parties' arguments regarding statutory immunity under the Illinois Tort Immunity Act.

III.    Count II – Constitutional Liberty Claim

Plaintiff also raises an occupational liberty claim under the Due Process Clause, brought through 42 U.S.C. § 1983. An individual's occupational liberty interests are infringed when, in the course of terminating him from a government employment position, "the state imposes a stigma or other disability on the individual which forecloses other opportunities." *Townsend v. Vallas*, 256 F.3d 661, 670 (7th Cir. 2001). To prevail on such a claim, a plaintiff must establish that: "(1) he was stigmatized by the defendant's conduct, (2) the stigmatizing information was publicly disclosed, and (3) he suffered a tangible loss of other employment opportunities as a result of public disclosure." *Johnson v. Martin*, 943 F.2d 15, 16 (7th Cir. 1991). Defendants challenge the second and third prongs of plaintiff's claim: public disclosure and tangible loss of other employment opportunities. Because the Court finds that the claim fails on the third prong, it need not address the question of public disclosure.

The liberty in question here protects "occupational liberty rather than liberty of reputation," therefore, the plaintiff must show that "because the charges have been made, it is unlikely that

10

anyone will hire him for a comparable job in the future." *Townsend*, 256 F.3d at 670 n.9. The standard here is high: it must become "virtually impossible for the [individual] to find new employment in his chosen field." *Hinkle v. White*, 793 F.3d 764, 768 (7th Cir. 2015) (citing *Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 617 (7th Cir. 2002)). Putting aside a legitimate dispute as to whether plaintiff's difficulty in attaining a job as a police officer after his termination was due to the contents of the termination letter or due to the fact of his termination alone, the fact that he now has a comparable job with the Kenosha County Sheriff's Department defeats his occupational liberty claim. *See Morgan v. Tandy*, No. IP 99-535-CHG, 2001 WL 1397307, at *11–12 (S.D. Ind. Oct. 17, 2001) (granting summary judgment for employer when difficulty attaining future jobs was due to fact of termination alone, not substance of termination letter); *Townsend*, 256 F.3d, at 672 (finding that a lifeguard's occupational liberty had not been infringed when he continued to work as a swimming instructor in a different jurisdiction). The Court therefore grants summary judgment for defendants with respect to Count II.

**Conclusion**

For the foregoing reasons, defendants' motion for summary judgment [54] is granted.

IT IS SO ORDERED.

Date: 3/24/2023

Entered: _____

SHARON JOHNSON COLEMAN
United States District Court Judge